STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

FILED

Sep 09 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> RECOLOGY SAN FRANCISCO; SUNSET SCAVENGER COMPANY; GOLDEN GATE DISPOSAL & RECYCLING COMPANY, <br>     Defendants. | CASE NO. CR21-356 WHO <br><br> VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Honest Services Wire Fraud; 18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) – Criminal Forfeiture <br><br> SAN FRANCISCO VENUE |

INFORMATION

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

1.      At all times material to this information, Recology Inc. was a resource recovery company headquartered in San Francisco and the direct or indirect parent company of Sunset Scavenger Company, Golden Gate Disposal & Recycling Company, and Recology San Francisco (all three collectively referred to as the "SF Recology Group").  Recology Inc. provided refuse collection and disposal services for residential and commercial customers in the City and County of San Francisco (the "City"), as well as for the City itself, through the SF Recology Group.

INFORMATION                                                     1

2. Mohammed Nuru was the Director of Public Works (DPW) for the City and County of San Francisco. As Director of Public Works, Nuru had substantial official influence over SF Recology Group's business in the City of San Francisco including, but not limited to, a contract for the City's dumping of materials at SF Recology Group's Sustainable Crushing facility. Among other things, Nuru was in a position to influence the contract rates, known as tipping fees, that DPW agreed to pay the SF Recology Group when DPW dumped materials at the SF Recology Group's facility. Nuru could also approve, deny, or otherwise affect operational changes that the SF Recology Group wanted to make to its businesses in the City.

3. John Porter was Vice President and Group Manager of the SF Recology Group, from no later than January 2018 until January 2021. Porter was San Francisco Group Controller from approximately December 2014 through approximately December 2017. As Controller, Porter had authority to approve payments by the SF Recology Group of $25,000 or less. As Vice President and Group Manager, Porter had authority to approve payments of $100,000 or less.

4. SF Recology Group Executive 2 was the Vice President and Group Manager of the SF Recology Group prior to Porter. Following a promotion, he was Chief Operating Officer of Recology Inc. until July 2020. As Vice President and Group Manager, SF Recology Group Executive 2 had authority to approve payments by the SF Recology Group of $100,000 or less.

5. Paul Giusti was the Group Government and Community Relations Manager for the SF Recology Group from 2012 until June 2020. As the Group Government and Community Relations Manager, Giusti served as SF Recology Group's liaison to elected officials and City departments such as DPW, as well as to community organizations. From approximately 2014 to December 2017, Giusti reported to SF Recology Group Executive 2. From January 2018 until Giusti's departure from the SF Recology Group, Giusti reported to Porter. Giusti was one of Nuru's primary contacts at the SF Recology Group. Giusti had authority to approve payments by the SF Recology Group of $25,000 or less.

6. During the relevant period, Porter, Giusti and SF Recology Group Executive 2 were employees of the SF Recology Group.

/ /

INFORMATION                             2

THE CONSPIRACY AND OVERT ACTS

7. In his capacity as Group Government and Community Relations Manager, Giusti first reported to SF Recology Group Executive 2, and then to John Porter, who replaced SF Recology Group Executive 2 as the Vice President and General Manager of the SF Recology Group.

8. In furtherance of the conspiracy, Giusti and others helped direct a stream of payments and benefits from SF Recology Group to Nuru or his designees, including financial contributions to organizations at Nuru's direction; services; gifts; and other things of value. The purpose of this stream of payments and benefits was to influence Nuru to act in the SF Recology Group's favor as opportunities arose, and to have Nuru take official action and exercise official influence in the SF Recology Group's favor in exchange for such payments and benefits.

9. The payments and benefits provided to Nuru on behalf of the SF Recology Group included, but were not limited to, the following: (1) approximately $150,000 per year, in $30,000 installments, from in or around 2014 through approximately the end of 2019, to San Francisco Non-Profit A, with the knowledge that Nuru could ultimately control how this money was used; (2) $60,000 in funding for the annual DPW holiday party in the period from 2016 to 2019, in the form of "holiday donations" to the Lefty O'Doul's Foundation for Kids; (3) a job for Nuru's son at one of the SF Recology Group companies; (4) SF Recology Group funded internships for Nuru's son, in the summer of 2017 and summer of 2018, at another San Francisco non-profit on whose board Giusti served; and (5) other gifts and personal and professional benefits in the form of funeral expenses in the amount of $3,500 for a DPW employee and a two-night stay at a New York hotel for Nuru and another high-ranking city official totaling $865.34 per room.

10. Giusti helped arrange for these payments and benefits with the knowledge and approval of his supervisor at the relevant time, either SF Recology Group Executive 2 or Porter. In helping to arrange for these and other payments and benefits for the purpose of influencing Nuru to act in the SF Recology Group's favor, Giusti, Porter, and SF Recology Group Executive 2, each acted within the scope of their employment and for the purpose of benefitting the SF Recology Group.

COUNT ONE:           (18 U.S.C. § 1349 – Conspiracy to Commit Honest Services Wire Fraud)

11. Paragraphs 1 through 10 of this Information are re-alleged and incorporated as if fully set

INFORMATION                                     3

forth here.

12. Beginning in or about 2014, and continuing through in or about January 2020, in the Northern District of California and elsewhere, the defendants,

RECOLOGY SAN FRANCISCO,

SUNSET SCAVENGER COMPANY, and

GOLDEN GATE DISPOSAL & RECYCLING COMPANY,

did knowingly conspire and agree with each other, Mohammed Nuru, and others, known and unknown to the United States Attorney, to commit honest services wire fraud, that is, devising and intending to devise a scheme and artifice to defraud and deprive the people of San Francisco of their right to the honest and faithful services of Mohammed Nuru through bribery and the concealment of material information, and to use or cause someone to use an interstate or foreign wire communication to carry out or attempt to carry out the scheme, in violation of 18 U.S.C. §§ 1343, 1346.

All in violation of Title 18, United States Code, 18 U.S.C. § 1349.

<u>FORFEITURE ALLEGATION</u>:    (18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c))

13. The allegations contained in this Information are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

14. Upon conviction for any of the offenses set forth in this Information, the defendants,

RECOLOGY SAN FRANCISCO,

SUNSET SCAVENGER COMPANY, and

GOLDEN GATE DISPOSAL & RECYCLING COMPANY,

shall forfeit to the United States all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

15. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: September 9, 2021

STEPHANIE M. HINDS
Acting United States Attorney

_/s/ Scott D. Joiner_
SCOTT D. JOINER
Assistant United States Attorney

INFORMATION       5